

**SO ORDERED.**
**SIGNED this 25th day of April, 2019**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | ) |
| | ) |
| **James David Moore, Jr.** | )     No. 1:16-bk-14947-SDR |
| **Labridget Denise Moore** | )     Chapter 13 |
| | ) |
|     Debtors | ) |

## ORDER AND MEMORANDUM

This matter is before the Court on the chapter 13 trustee's motion to modify the confirmed chapter 13 plan of debtors James Moore and Labridget Moore ("the Debtors") [Doc. No. 56] and the Debtors' objection [Doc. No. 59]. Also before the Court is the Debtors' related Motion for Consent to retain inheritance money to purchase a vehicle [Doc. No. 44], which was filed before the motion to modify, and the trustee's response in opposition [Doc. No. 46]. At the request of the Court, both parties have filed supplemental briefs. [Doc. Nos. 55, 57].

**I.  Jurisdiction**

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (L). These are the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

**II.  Factual Background**

The Debtors filed chapter 13 bankruptcy on November 15, 2016. The Court confirmed the Debtors' amended plan on February 14, 2017. [Doc. No. 28]. Mr. Moore's father passed away on June 24, 2018, more than 180 days after filing. [Doc. No. 50]. In January or February 2019, Mr. Moore received an inheritance of $14,764.83 from his father's estate, which is being administered in the Probate Court of Hamilton County, Tennessee. [Doc. Nos. 44, 50].

On January 21, 2019, the Debtors filed a motion to retain inheritance to purchase a vehicle, pursuant to 11 U.S.C. §§ 1303[1] and 363(b)(1).[2] [Doc. No. 44]. The trustee objected to the relief requested on the basis that the Debtors were seeking to retain non-exempt funds. [Doc. No. 46].

---

[1] Section 1303 provides that, "Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title."

[2] Section 363(b)(1) provides that:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless--
> (A) such sale or such lease is consistent with such policy; or
> (B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease--
> (i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and
> (ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

Soon after, the trustee filed a motion to modify the Debtors' chapter 13 plan, pursuant to § 1329, to increase the dividend to be received by unsecured creditors by the amount of Mr. Moore's non-exempt inheritance. [Doc. No. 56]. The confirmed plan is a 36-month plan with 10 months remaining. [*Id.*] The trustee estimates the pro rata dividend to general unsecured creditors will be $47. [*Id.*] The parties agree that, at a minimum, the Debtors are entitled to exempt $9,631. In her motion to modify, the trustee states the remaining $5,133.83 should be included in that which the unsecured creditors would receive when applying the best interest of creditors test and that the money should be treated as disposable income. [*Id.*]. The joint debt and the individual debt attributable to Mr. Moore specifically exceed the amount of the non-exempt inheritance proceeds. [Doc. No. 55, at 1].

The Debtors argue that the positive change in their circumstances resulting from the inheritance should not be reviewed in isolation without considering their need for a new vehicle and the attendant expenses. [Doc. No. 57, at 6]. They dispute whether the trustee is correctly applying the best interest of creditors test to their plan and challenge whether a requirement that they commit all of their disposable income is applicable to a modified plan. They argue that the need for a working vehicle should be viewed as an additional expense that must be considered in any analysis of a motion to modify. Following a hearing on the motion to retain inheritance, the parties agreed that the exempt portions of the inheritance could be distributed to the Debtors to purchase reliable transportation while the Court determines whether the inheritance is property of the estate and whether the entire amount should be charged against the Debtors' exemptions or treated as increased expenses. An agreed order was entered to that effect. [Doc. No. 50].

3

**III.    Legal Analysis**

The contested matters at issue concern whether the inheritance is property of the estate and whether the modification proposed by the chapter 13 trustee is confirmable. If the inheritance is not property of the estate, it would not need to be exempted under § 522. If it is property of the estate, then the Debtors' circumstances have changed, and the trustee seeks to modify the plan to provide a greater dividend to unsecured creditors. The trustee argues that the money acquired by the Debtor is like the property specified in § 541, that it is included as property of the estate under § 1306(a)(1), and that the Debtors must comply with the Bankruptcy Code requirements for the use of those funds.

The Debtors contend that the inheritance is excluded from the estate because it would be excluded by § 541(a)(5)(A). If it is not excluded under that code section, then the additional property should be available to help the Debtors complete their plan and for expenses before automatically going to the creditors.

*A. Inheritance as Property of the Estate*

The Bankruptcy Code defines property of a chapter 13 estate in §§ 541 and 1306. "[T]he interplay between these two sections . . . underlies the dispute" now before the Court.[3] *In re Tinney*,

---

[3] The Court notes that when considering whether a post-confirmation asset would become part of the bankruptcy estate of a chapter 13 debtor, other courts have also grappled with the relationship between 11 U.S.C. §§ 1306 and 1327(b). *See, e.g., Boddie v. PNC Bank, N.A.,* No. 2:12-cv-158, 2013 WL 443773, at *2-4 (S.D. Ohio Feb. 5, 2013) (citing *U.S. v. Harchar,* 371 B.R. 254, 264 (N.D. Ohio 2007)). Section 1327(b) provides that, "*Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor." (Emphasis added). The confirmation order in the current case contains just such an exception, expressly providing that, "Property of the estate does not vest in the debtor(s) until completion of the plan[.]" [Doc. No. 28, at 1, ¶ 3]. As in this case, the confirmation order at issue in *In re Wiggins,* No. 09-34282, 2012 WL 3889099, at *2 (E.D. Tenn. Sept. 7, 2012), "expressly stated" that "none of the property in their bankruptcy estate was to vest in the [d]ebtors until completion of their plan." In that case, the court found that because the debtors were in a chapter 13 case at the time the debtors received an inheritance, then the inherited property became property of the chapter 13 bankruptcy estate under § 1306(a)(1). *Id.* Because of the provision in the confirmation order, the Court does not find it necessary to consider further the relationship between §§ 1306 and 1327(b). *See also* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 237.1, at ¶ 4, Sec. Rev. June 8, 2004, www.Ch13online.com ("Courts that continue the estate or that refill the estate with property acquired after confirmation would have less trouble reaching a postconfirmation acquisition for the benefit of creditors.").

No. 07-42020-JJR13, 2012 WL 2742457, at *1 (Bankr. N.D. Ala. July 9, 2012). Section 541(a) provides that a bankruptcy estate is created upon the commencement of the case and describes the property that is included. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). It also includes some property acquired after the commencement of the case, such as property a trustee recovers through avoidance action (§ 541(a)(4)), proceeds, products, and rents or profit (§ 541(a)(6)), and relevant to this case, an inheritance received within 180 days of the commencement of the case (§ 541(a)(5)(A)[4]). Inheritances received after 180 days are treated like other property acquired postpetition and are excluded from property of the estate.

"Section 541 defines generally what property becomes property of the bankruptcy estate in a chapter under Title 11, but is modified in certain chapters for that particular type of case." *In re Gilbert*, 526 B.R. 414, 416 (Bankr. N.D. Ga. 2015) (citing 11 U.S.C. § 541(a)) (footnote in original omitted). For chapter 13 proceedings, §1306(a) expands the scope of property included in the estate. *Id.* The relevant portions of the section state:

> (a) Property of the estate includes, in addition to the property specified in section 541 of [the Code]—

---

[4] The bankruptcy estate includes:

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
>
> (A) by bequest, devise, or inheritance;

11 U.S.C. § 541(a)(5)(A).

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first[.]

11 U.S.C. § 1306(a).

Considering the interplay between the two statutes, "an apparent conflict arises . . . as to whether the 180-day time restriction applies to inheritances obtained in chapter 13 cases, or whether the extended timeframe contained in § 1306(a)(1) governs." *In re Gilbert*, 526 B.R. at 416. There is a spilt in the authorities interpreting whether property inherited outside the 180-day period should be included in a chapter 13 estate. However, "[n]umerous courts have held that § 1306 expands the 180-day time period in § 541(a)(5)(C) to classify an inheritance or other 'windfall' received more than 180 days after commencement of the case. . . . This includes Courts in the Sixth Circuit." *In re Sizemore*, No. 09-61064, 2013 WL 6328260, at *3 (Bankr. E.D. Ky. Dec. 5, 2013) (citing *In re Wetzel,* 381 B.R. 247, 253-54 (Bankr. E.D. Wis. 2008); *U.S. v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007); *Boddie v. PNC Bank, N.A.,* No. 2:12-cv-158, 2013 WL 443773 (S.D. Ohio Feb. 5, 2013)); *see also In re Wiggins,* No. 09-34282, 2012 WL 3889099 (E.D. Tenn. Sept. 7, 2012). "The overwhelming majority of courts to have addressed this issue 'agree that § 1306 modifies the § 541 time period in Chapter 13 cases.' " *Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (quoting *In re Vannordstrand,* 356 B.R. 788, 2007 WL 283076, at *2 (B.A.P. 10th Cir. 2007) (collecting cases)); *see also In re Tinney,* 2012 WL 2742457, at *1. Additionally, courts adopting the majority position argue that statutory interpretation and congressional intent support their conclusion.

The Fourth Circuit found that the plain language of § 1306 "manifests Congress's intent to expand the estate for [c]hapter 13 purposes by capturing the types, or 'kind,' of property described in [§] 541 (such as bequests, devises, and inheritances), but not the 180–day temporal restriction."

6

*Carroll*, 735 F.3d at 150 (citing 11 U.S.C. § 1306(a)); *see also In re Tinney*, 2012 WL 2742457 at *1 (finding that "by its plain language" § 1306 "expands the 180-day time period in § 541(a)(5)(A)" and that "[t]he large majority of courts to address this issue agree" and collecting cases). "[O]n its face, [§] 1306(a) incorporates only the kind of property described in [§] 541 into its expanded temporal framework." *Carroll,* 735 F.3d at 150; *see also In re Dale*, 505 B.R. 8, 12-13 (B.A.P. 9th Cir. 2014) (noting "[t]he Fourth Circuit's decision in *Carroll v. Logan* is consistent with the great weight of authority interpreting the application of § 1306(a)(1) with respect to postpetition inheritances in chapter 13, explicitly considering the temporal exclusion included in § 541(a)(5)" and ultimately adopting its analysis).

Further, it is a well-established rule of statutory construction that "a specific statutory provision governs a general one." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (citing *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 405 (6th Cir. 1998)); *see also Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 614 (6th Cir. 2013) (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 132 S. Ct. 2065, 2071, 182 L. Ed. 2d 967 (2012)). Applying this canon of construction, *Carroll* determined that "[§] 1306(a) is specific to [c]hapter 13 bankruptcies and defines estates solely for purposes of that reorganization chapter. Section 541, by contrast, is a general provision that provides generic contours for bankruptcy estates." 735 F.3d at 152. "Congress has harmonized these two statutes for us." *Id.* at 150. Citing *Carroll,* the *Gilbert* Court explained that

> This canon of statutory interpretation applies to the situation here, where there exists a general exclusion of property of the estate after a certain date which is contradicted by a specific inclusion of property of the estate after that date. As discussed above, § 541 defines property of the estate generally. While § 541(a)(5) does contain a specific time restriction in which a debtor's interest in certain property becomes property of the estate, that restriction applies generally to most chapters in Title 11, unless another section

7

> within a particular chapter expands or restricts the definition for that specific type of case. However, § 1306(a)(1) is specific to chapter 13 cases, and contains a specific time restriction for chapter 13 cases only. Therefore, the Court believes that § 1306(a)(1) is the more specific statute that should govern over the general exclusion in chapter 13 cases.

*Gilbert*, 526 B.R. at 418 (footnote in original omitted).

A minority of courts have adopted a contrary view, holding instead "that the phrase 'of the kind' in § 1306 must carry with it the temporal 180–day element of § 541(a)(5)(A) and, therefore, § 1306 incorporates the 180–day time frame." *In re Tinney*, 2012 WL 2742457, at *2 (citing *In re Key,* 465 B.R. 709 (Bankr. S.D. Ga. 2012); *In re Walsh,* No. 07-60774, 2011 WL 2621018 (Bankr. S.D. Ga. June 15, 2011); *In re Schlottman,* 319 B.R. 23 (Bankr. M.D. Fla. 2004)). The Debtors in their brief rely on *In re McAllister*, 510 B.R. 409 (Bankr. N.D. Ga. 2014), which agreed with the analysis in *Key* and *Walsh* and held that "property of the estate under § 1306(a)(1) does not include property that § 541(a)(5) does not include," "that the specific date restriction set forth in § 541(a)(5) controls," and "that § 1306(a)(1) does not eliminate that restriction." *Id.* at 420. *Key,* like *Carroll,* relied on the language of § 1306, but *Key* held that the statute "does not alter the specific defining time clause of § 541(a)(5)." 465 B.R. at 712 (citing §§ 541(a)(1) and 1306(a)(1); *In re Walsh,* 2011 WL 2621018 at *2). However, *Carroll* found that under the minority interpretation "[§] 1306(a) . . . loses all meaning. By contrast, neither statute is rendered superfluous, and both are given effect, if [§] 1306(a)'s extended timing applies to [c]hapter 13 estates and supplements [§] 541 with property acquired before the [c]hapter 13 case is closed, dismissed, or converted." *Carroll*, 735 F.3d at 152. "[C]ourts should give effect to every word of a statute whenever possible." *Id.* (citing *Broughman v. Carver*, 624 F.3d 670, 677 (4th Cir. 2010)).

The majority position on expanding the temporal limitation also relies on congressional intent. "Congress intended to expand property of the estate in chapter 13 cases, and this resolution

8

of the two statutes does just that." *In re Gilbert*, 526 B.R. at 418 (quoting S. Rep. 95-989, at 140-41 ("Section 1306 broadens the definition of property of the estate for chapter 13 purposes to include all property acquired . . . after the commencement of the case."); H.R. Rep. 95–595, at 428 ("A slightly different rule governing property of the estate applies in a chapter 13 case. All property of the estate, as provided in [§] 541, is property of the estate in a chapter 13 case. In addition, however, property of the kind specified in [§] 541 that the debtor acquires after the commencement of the case but before conversion, dismissal, or closing of the case is also property of the estate.")).

In considering this question, many courts have noted that the majority view is in keeping with the risks and benefits that accompany the long-term commitment required of a chapter 13 case. As explained by the *Tinney* Court,

> The benefits of chapter 13 come with a price tag, and . . . some risk. For the privilege of retaining encumbered assets and imposing a payment plan on secured creditors, a chapter 13 debtor, unlike her chapter 7 counterpart, must make a long-term commitment, during which her post-petition property and wages are utilized to satisfy that commitment. And that commitment is subject to modification when circumstances change the debtor's ability to pay during the life of the case. *See generally* § 1329; *In re Waldron,* 536 F.3d at 1243 ("The [First Circuit] reasoned that this approach 'harmonizes two apparent inconsistent sections,' 1306(a) and 1327(b); allows for meaningful plan modification under [§] 1329; and is consistent with the *ability-to-pay policy underlying Chapter 13.*" Emphasis added). *If those changed circumstances result in additional post-petition estate property becoming available, the debtor's plan should be modified to increase the amount paid to unsecured creditors. Such additional property may be increased earnings, but most often comes in the form of a lump-sum payment from, for example, casualty insurance, settlement of a lawsuit, life insurance proceeds, or as in this case, an inheritance.* And a debtor has the duty to disclose property acquired post-petition by amending her schedules. *Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) (citing § 541(a)); Waldron,* 536 F.3d at 1244. Thus, not applying the 180-day limitation under § 541(a)(5) when determining what is included within a chapter 13 estate under § 1306(a) is consistent with a major distinction between chapters 13 and 7.

9

*Tinney*, 2012 WL 2742457, at *3 (emphasis added; footnote in original omitted); *see also Carroll*, 735 F.3d at 151) ("The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay . . . as well as the debtor's increased ability to pay . . . when a [c]hapter 13 debtor's financial fortunes improve, the creditors should share some of the wealth."); *In re Harvey*, 356 B.R. 557, 563-64 (Bankr. S.D. Ga. 2006), *subsequently aff'd sub nom. In re Waldron*, 536 F.3d 1239 (11th Cir. 2008) (citing § 1329(a)) ("[A] debtor's post-petition rights and obligations include both the right to seek a modification of a Chapter 13 plan under certain circumstances as well as the obligation to be subject to a post-confirmation modification under certain circumstances.")

In considering the analysis of the issue, which has respected judges on both sides offering thoughtful and substantive support for their decisions, this Court is ultimately persuaded by the majority position that § 541 is a general statute whose definition of property of the estate is expanded by § 1306 and that the temporal time constraints in § 541(a)(5) are omitted. If there was a reason to include an inheritance received within 180 days after filing in a chapter 7, then extending that period of inclusion to the end of a chapter 13 case is consistent with § 1306's inclusion of property acquired after the commencement of the case for the duration of the plan. Because the Debtor acquired the inheritance "after the commencement of the case but before the case is closed, dismissed, or converted," the Court finds that the inheritance is property of the estate under § 1306(a)(1).

### B. Whether the Trustee's Modified Plan Meets the Requirements for Confirmation

Having determined that the inheritance is property of the estate, the Court must consider whether the proposed modification may be confirmed. The trustee has proposed a modification to include the inheritance less any exemption as an additional distribution to creditors. The trustee's

reason for the modification is sound. Property of the estate is available to the Debtors' creditors unless it is properly exempted. *In re Sizemore*, 2013 WL 6328260, at *3.

> *1. Is "projected disposable income" relevant to the Court's determination of whether the trustee's plan is confirmable?*

Both parties refer to disposable income in their arguments. The Debtors argue that in a chapter 13 their additional expenses, in addition to exemptions, should reduce the property available to creditors. To meet the confirmation requirements at the initial confirmation of a plan, a debtor is only required to commit his or her projected disposable income to creditors for the applicable commitment period. 11 U.S.C. § 1325(b)(1)(B). The determination of that amount requires consideration of not only income but also reasonable expenses. Although there is controversy about whether the "projected disposable income" test applies to a modification, the Debtors contend that they should have the benefit of the disposable income calculation to determine what should be available for creditors before they have to apply their exemptions to remove the property from the reach of their creditors.

This argument has some equitable appeal. All parties admit that the Debtors' vehicle no longer works and that purchasing a replacement vehicle is an action that benefits the Debtors and will assist in the completion of their plan. If these Debtors were to purchase a replacement vehicle on credit, and pay for it with a postpetition income increase, the Debtors might be moving for their own modification to reduce the payments to creditors due to increased expenses. They certainly would not need to claim an exemption in the increased periodic income. The Debtors contend there should not be a different result where the same need exists but a debtor receives an improvement in his or her financial circumstances in a lump sum.

Upon a review of modification cases in which new assets or lump sums come into a case, this Court has not found authority for applying the type of disposable income analysis requested

11

by the Debtors. Other courts have consistently allowed exemptions but have not considered expenses to reduce the amount available to creditors. The Court has found no basis in the Bankruptcy Code or the case law that would require such an analysis prior to a determination of what property should be paid to creditors.

The trustee argues that the Debtors must commit these additional monies to the plan under § 1325(b). In the motion to modify, the trustee proposes to consider "monies . . . as disposable income." [Doc. No. 56, at 2, ¶ 6]. The Debtors, while arguing for a disposable income analysis to limit what should be paid to creditors, oppose the application of the disposable income test as a reason that the trustee's plan should be confirmed. They argue that designating the inheritance money as "disposable income" poses "a legal impossibility." [Doc. No. 59, at 1]. Section 1325(b)(2) describes "disposable income" as "current monthly income received by the debtor" less certain exclusions and reasonable expenses. As the Debtors point out, "current monthly income," defined in § 101(10A), "captures the six whole months of income immediately before the filing of the case." [Doc. No. 59, at 1]. Because the inheritance was not received during that time period, the Debtors argue it falls outside the statutory definition of disposable income.

Courts within the Sixth Circuit have "wrestled with" the issue of whether the disposable income requirement in § 1325(b) applies to chapter 13 post-confirmation modifications. *In re Martin*, 2013 WL 6196566, at *4. The "more recent view . . . is that § 1325(b) does not apply[.]" *Id.* (citing *In re Hill,* 386 B.R. 670, 677 (Bankr. S.D. Ohio 2008); *In re Crim,* 445 B.R. 868, 871 (Bankr. M.D. Tenn. 2011); *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005)); *see also In re Swain*, 509 B.R. 22, 30 (Bankr. E.D. Va. 2014) ("The weight of authority is that § 1325(b) does not apply to § 1329 plan modifications."). Section 1329(b) provides the confirmation requirements of a modified plan, and it does not include § 1325(b). "Simply put,

the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of 1325(b)(1)(B) with respect to modified plans." *In re Sunahara*, 326 B.R. at 781. Applying the statutory definition of "current monthly income" implicated in § 1325(b) would mean that "a debtor's income at the time of modification would be the exact same as their income at the time of filing the bankruptcy petition[.]" *In re Martin*, 2013 WL 6196566, at *5. "Both courts and a leading treatise have called such a result 'nonsensical,' as doing so would require courts to use income amounts that may differ significantly from the debtor's actual income at the date of modification." *Id.* (citing 8 *Collier on Bankruptcy,* ¶ 1329.03; *In re Hill,* 386 B.R. at 677; *In re Ireland,* 366 B.R. 27, 30-32 (Bankr. W.D. Ark. 2007)).

Because § 1329 does not reference § 1325(b), this Court concludes that § 1325(b) does not apply to confirmation of a modified chapter 13 plan. Accordingly, meeting the projected disposable income test of § 1325(b) is not a requirement to confirm a modified plan. *In re Martin*, 2013 WL 6196566, at *4 (citing *In re Crim,* 445 B.R. at 871). Therefore, the Court will consider whether the trustee's plan is confirmable without the need to consider whether the inheritance falls within the definition of projected disposable income.

*2. Does the trustee's plan meet the requirements for confirmation?*

The trustee's authority to modify a plan is granted by the Bankruptcy Code. After confirmation but before completion of the payments under the plan, the trustee may request a modification to increase payments to unsecured creditors. 11 U.S.C. § 1329(a)(1). Modification in these circumstances comes after there is a confirmed plan that has become final. The confirmed plan binds both debtors and creditors. 11 U.S.C. § 1327(a). Because of the deference given to final confirmation orders, courts have limited the types of modifications to those listed in the statutory provisions. Further, modification under § 1329(a) is limited to matters that arise post-confirmation

13

and which were unseen at the time of confirmation. *In re Storey*, 392 B.R. 266 at 272-73 (6th Cir. B.A.P. 2008). The Debtor's inheritance qualifies as such a postpetition matter that has changed Mr. Moore's financial circumstances, and the trustee may seek an increased distribution for creditors pursuant to the statute.

Section 1329(b)(1) provides the confirmation requirements that the trustee must satisfy to confirm a modified plan. Relevant to this case, a proposed modified plan must meet the best interest of creditors test (§ 1325(a)(4)), the requirements for good faith (§ 1325(a)(3)), and feasibility (§ 1325(a)(6)).

When the trustee is the plan proponent, the trustee will have the burden of proof usually assigned to the debtor at a confirmation hearing. *See* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4th Ed., § 253.1 at ¶ 28, Sec. Rev. June 15, 2004, www.Ch13online.com. ("The trustee … will have the burdens normally assigned to the debtor, including the ultimate burden of persuasion with respect to each of the § 1325(a) elements."); *but see, SouthTrust Mobile Servs. Inc. v. Englebert*, 137 B.R. 975, 986-87 (N.D. Ala. 1992) (district court declined to conduct an inquiry into the trustee's good faith in proposing a plan.).

Turning to the requirements for confirmation, the Debtors argue that "the best interest of creditor's test is not implicated here" because the inheritance in this case would not qualify as property of the estate under § 541(a)(5)(A). [Doc. No. 57, at 2.]. However, as discussed above, the Court has held that the inheritance is property of this estate. The Debtors are correct that the Court should not include the inheritance in what creditors would receive in a chapter 7 case when looking to see whether the trustee's modification has met the test. The Debtor received the inheritance more than 180 days after filing, so the inheritance would not be property of the estate under a chapter 7 absent a bad faith conversion of this chapter 13 case. *See* § 348(f)(2). However, the

14

exclusion of the inheritance does not mean the test is inapplicable. It is, and when this test is applied to the modification, the increased distribution proposed by the trustee offers more to creditors than they would get in a chapter 7. Accordingly, the trustee's modified plan meets the best interest of creditors test.

With respect to the "good faith" requirement, the Sixth Circuit "does not focus on one item, but instead 'requires consideration of the totality of the circumstances.' " *In re Martin*, No. 10-64790, 2013 WL 6196566, at *3 (Bankr. N.D. Ohio Nov. 27, 2013) (quoting *Soc'y Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir. 1992)). To evaluate good faith, a court should consider such factors as "the debtor's income, the debtor's living expenses, special circumstances (such as unusually high medical expenses), the amount of plan payment as indicative of the debtor's sincerity, and 'the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.' " *In re Martin*, 2013 WL 6196566, at *3 (quoting *In re Brinkley,* 2013 WL 5935157, at *6 (Bankr. E.D. Mich. 2013)).

An increase in the Debtors' assets available to creditors is part of the Court's consideration of a modification. "[T]he debtor's actual income and expenses at the time of the proposed modification are used to determine whether the payments should be adjusted." *In re Crim*, 445 B.R. at 871 (quoting *In re Prieto*, 2010 WL 3959610 (Bank. M.D. Fla., Sept. 22, 2010)). The trustee's modification to require an increase in payments after allowing the Debtors to take their exemptions would support what the Sixth Circuit has describes as the hallmark of a good faith plan—"a sincerely intended repayment of prepetition debt consistent with the debtor's resources." *Metro Emps. Credit Union v. Okoreeh-Bah (In re Okoreeh-Bah)*, 836 F.2d 1030, 1033 (6th Cir. 1988).

The Debtors have not specifically objected to the modification as being proposed in bad faith, but they have raised the issue of whether the Court should consider not only the increase in assets that reflects a change in circumstances but also whether there have been increased expenses that should be considered in any determination of a "debtor's resources." Here, the Debtors propose that any consideration of the "totality of the circumstances" should include the Debtors' allowed property exemptions plus demonstrated need with only the remainder going to the creditors. [Doc. No. 57, at 6]. The Debtors argue that they need the inheritance. [*Id.*]. The Debtors also argue that the inheritance "is so small that the proceeds are either exempt or the non-exempt balance is an equivalent type of cash collateral under § 363(a) necessary for the Debtor's rehabilitation." [*Id.*]. The Debtors need a working vehicle. The vehicle that they owned when the case started no longer runs. The Debtors argue that this increased expense should be considered before the Court requires the Debtors to use the remaining exemption to pay a necessary expense. [*Id.* at 7]. The trustee has no issue with using exempt funds to obtain reliable transportation. Such a use "fits squarely into the purpose of exemptions." [Doc. No. 55, at 5]. Her dispute is that the Debtors may not "keep items necessary for living *and* exempt additional other property up to the amount of the allowed statutory exemptions." [*Id.*] (emphasis in original).

The Court does not entirely agree with the trustee's contention. If these Debtors were to purchase a replacement vehicle on credit and pay for it with a postpetition salary increase, the Debtors would not have had to claim any exemptions in the additional salary or increase the dividend to creditors. The Court is concerned that the result is so different when the same need exists but a debtor receives the financial improvement via a lump sum. Therefore, under a totality of the circumstances analysis, the Court finds that the Debtors should be given a chance to show whether their liabilities and expenses have increased along with their assets or income.

16

With respect to the feasibility requirement, the plan proponent must show that a debtor "will be able to make all payments under the plan and to comply with the plan[.]" 11 U.S.C. § 1325(a)(6). "While the feasibility requirement is not rigorous, the plan proponent must, at a minimum, demonstrate that [d]ebtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." *In re Martin*, 2013 WL 6196566, at *3 (internal citation and quotation marks omitted). This factor is where the Debtors' argument about their need for a new car and its impact on their financial circumstances may be most relevant. The Debtors' Schedule I and J, submitted on November 15, 2016, at the time of filing, indicated that the Debtors' monthly income was $2,698.20 and their monthly expenses totaled $2,421, leaving a monthly net income of $277.20. [Doc. No. 1, at 38]. Those schedules are now over two years old, and the Court must consider "the debtor's actual income and expenses at the time of the proposed modification." *In re Martin*, 2013 WL 6196566, at *4. Accordingly, to determine whether to confirm the trustee's proposed modified plan, the trustee must provide evidence of the modified plan's feasibility based on the Debtors' current income and expenses. The Debtors may object and show that, in their current financial circumstances, the trustee's proposal for creditors may leave them in such a position that they will be unable to complete the plan.

### IV. Conclusion

For the reasons stated above, the Debtors' Motion for Consent to retain inheritance property [Doc. No. 44] is DENIED. The Court finds that the inheritance is property of the estate. The Court will defer ruling on the trustee's motion to modify until a further evidentiary hearing can be held on whether the plan meets the requirements of good faith and feasibility. The Court will reset a hearing on the confirmation of the trustee's motion for modification for May 23, 2019, at 2:30 p.m., in Courtroom A, Historic United States Courthouse, Chattanooga, Tennessee. The

Debtors shall have until May 6, 2019, to file any amendment to their objection to the trustee's plan and to file amended Schedules C, I, and J if they wish to rely on exemptions and changed income and expenses in support of their objection to confirmation. If no amendments are filed, the trustee may rely on the sworn schedules on the docket and include the inheritance of $14,764.83 less any exemption claimed as additional property of the estate. The trustee shall have until May 15, 2019, in which to respond if she wishes to file any additional response. It is so ORDERED.

###